UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: FACEBOOK, INC., CONSUMER PRIVACY USER PROFILE LITIGATION | MDL No. 2843<br>Case No. 18-md-02843-VC |
| This document relates to:<br><br>People of the State of Illinois, ex rel. Kimberly M. Foxx v. Facebook | Case No. 18-cv-06486-VC<br><br>**PRETRIAL ORDER NO. 15: ORDER GRANTING MOTION TO REMAND** |

The question presented by this motion is whether a lawsuit against Facebook, filed in Illinois state court by the Cook County State's Attorney, asserting violations of Illinois law and seeking civil penalties along with statewide injunctive relief, was properly removed to federal court. The answer is no.

## I.

In 2018, the media reported that Cambridge Analytica, a British political consulting firm, had obtained personal data on millions of Facebook users and exploited those data in connection with the 2016 presidential campaign. In response, dozens of lawsuits were filed in federal courts around the country. Most of the lawsuits were class actions brought by individual Facebook users on behalf of a proposed nationwide class of people whose data had been obtained by Cambridge Analytica or other third parties. All the lawsuits named Facebook as a defendant; some included Cambridge Analytica and other defendants as well.

When multiple similar federal lawsuits are filed around the country, the Judicial Panel on Multidistrict Litigation considers whether to transfer the cases for pretrial proceedings to a single federal judge. The purpose of a transfer is to promote efficiency and fairness by avoiding

conflicting results and ensuring that multiple judges are not called upon to adjudicate the same pretrial issues. Assuming the lawsuits survive all the pretrial rulings and don't settle, the judge releases them back to the districts where they were originally filed for trials to be conducted.

The Panel has assigned several dozen cases arising from Facebook's data sharing to the undersigned federal district judge for pretrial purposes. There is a dispute about whether one of those cases should be part of the group: a lawsuit that was originally filed in Illinois state court, under the Illinois Consumer Fraud and Deceptive Business Practices Act, by Cook County State's Attorney Kimberly Foxx in the name of the "People of the State of Illinois." Foxx seeks a statewide injunction to require Facebook to better protect user data, as well as civil penalties for Facebook's prior conduct. The lawsuit does not seek restitution or damages for Facebook users based on past conduct.

A case can get into federal court, even when a lawsuit does not allege federal law violations, through diversity jurisdiction. Diversity jurisdiction exists when a party from one state brings claims under state law against a defendant from another state and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. If a case meeting this description is initially filed in state court, an out-of-state defendant may remove the case to federal court. *Id.* § 1441. A plaintiff who believes the case has been improperly removed because there is not actually diversity jurisdiction can file a motion to remand the case to state court. *Id.* § 1447.

Facebook removed the Foxx lawsuit from Illinois state court to federal court in the Northern District of Illinois, asserting federal jurisdiction based on diversity of citizenship (specifically, the County is a citizen of Illinois while Facebook is a citizen of California and Delaware). Foxx moved to remand the case to state court. The multidistrict litigation panel transferred the case before the remand motion was decided, so the motion is now pending before this Court.

## II.

A case brought by a state, under state law, cannot be filed in or removed to federal court. This is so even if the defendant is from another state. Diversity jurisdiction is lacking in such a

case because the state is not a citizen of anywhere. *See Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 174 (2014); *Postal Telegraph Cable Co. v. State of Alabama*, 155 U.S. 482, 487 (1894). This rule also applies where the plaintiff itself is not the state, but one who has brought suit on behalf of the state, so long as the state is the "real party in interest." Whether a state is the real party in interest for diversity jurisdiction purposes is a question of federal law, although the inquiry is informed by state law. *Cf. Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 n.5 (1997); *Dep't of Fair Employment & Housing v. Lucent Techs., Inc.*, 642 F.3d 728, 738 (9th Cir. 2011).

When a case has been removed from state court, doubts about federal jurisdiction must be resolved in favor of remand. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). This is, in large part, because federal courts should not intrude upon the right of the states to resolve local disputes through their own judicial systems. *See Franchise Tax Bd. v. Construction Laborers Vacation Trust for S. California*, 463 U.S. 1, 21 n.22 (1983); *see also Healy v. Ratta*, 292 U.S. 263, 270 (1934) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined."). This is true regardless of whether the plaintiff is a private party or a government entity. But when an action has been brought by a state or one of its officials or subdivisions, the need to resolve doubts against the exercise of federal jurisdiction is particularly acute. "[C]onsiderations of comity" should make federal courts "reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." *Franchise Tax Bd.*, 463 U.S. at 21 n.22.

Furthermore, although federal courts should always be careful before exercising removal jurisdiction, and should be even more careful when the case has been brought by a state or one of its officials, the concern is even more pronounced in the context of multidistrict litigation. When a case is folded into multidistrict litigation, it will almost inevitably be delayed. Its fate will be bound up in the fates of many others. The transferee judge may decide that certain claims should be prioritized or addressed first. The plaintiff may thus lose control over the direction of the

lawsuit. And this is a serious concern if the plaintiff is a government entity or official – the multidistrict litigation process would intrude on state or local sovereignty. Therefore, where a case is originally filed in state court to vindicate a state's sovereign interests, federal courts should exercise the greatest possible caution before asserting jurisdiction. The purpose of the multidistrict litigation process is to make the adjudication of *federal* cases more efficient and fair, not to interfere with the ability of state courts to adjudicate claims brought under state law by state or local officials.

### III.

In support of her remand motion, Foxx notes that although she is merely a county prosecutor (a "State's Attorney" in Illinois is the equivalent of a District Attorney in California and other states), her lawsuit was brought in the name of the People of Illinois, under the authority conferred upon her by the Illinois Consumer Fraud Act. *See* 815 Ill. Comp. Stat. 505/7(a). This, according to Foxx, means the lawsuit was effectively brought by the State of Illinois, and Illinois is the real party in interest for purposes of the diversity jurisdiction analysis.

In response, Facebook primarily offers four somewhat related arguments for why Illinois is not the real party in interest in Foxx's lawsuit. First, Facebook reads a 1901 Supreme Court case as standing for the proposition that a state cannot be the real party in interest unless the relief sought in the lawsuit would benefit only the state, as a distinct entity, without any benefit going to private parties or discrete parochial interests. Second, Facebook appears to contend that even if this is not always the rule, it should at least be the rule in a case brought by a subordinate official or entity (such as a county prosecutor), as opposed to the state's chief legal officer (usually the Attorney General). Third, Facebook argues that, as a matter of Illinois law, a subordinate official like the Cook County State's Attorney is not authorized to bring actions for statewide relief on behalf of the state, meaning that Illinois could not possibly be the real party in interest. Fourth, Facebook asserts that the civil penalties sought by Foxx would go to the Cook County treasury, and argues that a state cannot be considered the real party in interest if the penalties from an action by a county prosecutor do not go directly to the state.

# A.

For its initial argument, Facebook primarily cites *Missouri, Kansas & Texas Railway Co. v. Missouri Railroad & Warehouse Commissioners*, 183 U.S. 53 (1901).[1] There, the Missouri Railroad Commission, a state regulatory body, ordered an out-of-state railway company to stop charging excessive rates for travel over a bridge in Missouri. *Id.* at 57. The company refused to comply, so the Railroad Commission sued the company in state court. *Id.* The company attempted to remove the case to federal court, but the state trial court refused to honor the removal.[2] The dispute was adjudicated in the state court system, with the Missouri Supreme Court ultimately ruling against the railway company. *Id.*

The United States Supreme Court vacated the ruling, concluding that the railway company should have been permitted to remove the case to federal court on diversity jurisdiction grounds. *Missouri Railroad*, 183 U.S. at 61. The Court viewed the interests represented by the Railroad Commission as too parochial to deem the State of Missouri the real party in interest:

> It is not an action to recover any money for the state. Its results will not enure to the benefit of the State as a State in any degree. It is a suit to compel compliance with an order of the railroad commissioners in respect to rates and charges. The parties interested are the railway company, on the one hand, and they who use the bridge, on the other; the one interested to have the charges maintained as they have been, the others to have them reduced in compliance with the order of the commissioners. They are the real parties in interest, and in respect to whom the decree will effectively operate.

*Id.* at 59-60.

In reaching this ruling, the Court also stated: "[I]t may fairly be held that the State is such real party when the relief sought is that which enures to it alone, and in its favor the judgment or decree, if for the plaintiff, will effectively operate." *Missouri Railroad*, 183 U.S. at 59. This statement was unnecessary, since the Court found that the Railroad Commission's lawsuit would

---

[1] Although some courts have referred to the case as *Missouri, Kansas & Texas Railway Co. v. Hickman*, this Court uses the caption of the case from the U.S. Reports.

[2] At the time, a defendant needed permission to remove a case; now a defendant can simply file a notice of removal in federal court.

not benefit the State "in any degree." *Id.* But Facebook relies on it heavily, and argues that Foxx's lawsuit would, if successful, benefit the Cook County treasury and Facebook users, rather than the State alone.

The Supreme Court next considered this issue in *Port of Seattle v. Oregon & Washington Railroad Co.*, another case pitting a local government entity – the Port of Seattle – against an out-of-state railway company. 255 U.S. 56 (1921). The Port of Seattle sued the company, seeking to prevent it from building along the waterways owned by the State of Washington. *Id.* at 61-62. The company removed the case to federal court, and the dispute made its way up to the Supreme Court, which held in favor of the Port on the merits. *Id.* at 69. In doing so, however, the Court rejected the Port's threshold argument that the case should never have been removed to federal court on diversity grounds because the State of Washington was the real party in interest. *Id.* at 70. The Court tacitly recognized the possibility that Washington had some interest in the case, but the Port of Seattle had a much stronger separate financial interest in the outcome because a ruling against the railroad company would mean that the Port could charge the company additional money for the right to alter the waterways. *Id.* at 71. The Court further observed that the Port was not a state entity that enjoyed immunity under the Eleventh Amendment from suit in federal court. *Id.*

The Supreme Court has not had a case since 1921 about whether a state is the real party in interest for diversity purposes. But most courts have applied those early precedents in a fashion that significantly undermines Facebook's reliance on the "enures to the state alone" phrase from *Missouri Railroad*. For example, in *Nevada v. Bank of America Corp.*, the Nevada Attorney General brought a case against an out-of-state bank alleging fraudulent mortgage and foreclosure practices statewide. 672 F.3d 661, 664 (9th Cir. 2012). Despite the fact that the Attorney General sought restitution for the victims of the fraud in addition to a statewide injunction and civil penalties, the Ninth Circuit ruled that the State of Nevada was the real party in interest for diversity purposes. *Id.* at 670-72. The Court emphasized that the question of whether Nevada was the real party in interest must be answered by "looking at the case as a

6

whole," and by examining "the essential nature and effect of the proceeding as it appears from the entire record." *Id.* at 670. The Court emphasized Nevada's "sovereign interest" in the enforcement of its consumer protection laws, and specified that the ability of individual consumers to benefit from a restitution order did not negate that interest. *Id.* at 671. Moreover, "[t]he state's strong and distinct interest in this litigation is further strengthened by the other forms of relief it seeks," including civil penalties not available in suits brought by individual consumers, as well as statewide injunctive relief. *Id.* at 671-72.[3]

In reaching this conclusion, the Ninth Circuit distinguished its ruling from a year earlier in *Dep't of Fair Employment & Housing v. Lucent Technologies, Inc.*, 642 F.3d 728 (9th Cir. 2011). In *Lucent*, California's Department of Fair Employment and Housing sued an out-of-state company in state court. *Lucent*, 642 F.3d at 735. The Department brought the suit on behalf of one of the company's employees, alleging the company had violated state law by discriminating against the employee on the basis of disability. *Id.* The lawsuit, in which the employee was actually labeled "Real Party in Interest," sought monetary relief for the employee, injunctive relief for the employee, and company-wide injunctive relief designed to prevent the company from discriminating in the future. *Id.* at 739 & n.8. The Ninth Circuit ruled that, because the lawsuit would primarily vindicate the rights of one person rather than the state writ large, California was not the real party in interest for diversity purposes. *Id.* at 739. In *Nevada*, the Ninth Circuit explained the difference between the two cases:

> Our rationale for finding that the aggrieved individual was the real party in interest in *Lucent* compels the conclusion that Nevada is the real party in interest here. Unlike the California DFEH, which sued on behalf of a *single* aggrieved employee, here, the Nevada Attorney General sued to protect the hundreds of thousands of homeowners in the state allegedly deceived by Bank of America, as well as those affected by the impact of Bank of America's alleged frauds on Nevada's economy.

---

[3] Because transferee courts in multidistrict litigation proceedings apply the federal law of their home circuit even when the case came from a different circuit, the remand motion is governed by Ninth Circuit law. *See In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 699-700 & n.12 (9th Cir. 2011).

672 F.3d at 670.

Other circuits have taken a similar approach. Like the Ninth Circuit, those courts examine the case as a whole to assess whether the primary relief sought and interests served are the state's, even if parochial interests are also served by the lawsuit. *See, e.g.*, *AU Optronics Corp. v. South Carolina*, 699 F.3d 385, 394 (4th Cir. 2012) ("We therefore agree with the Ninth and Seventh Circuits that a claim for restitution, when tacked onto other claims being properly pursued by the State, alters neither the State's quasi-sovereign interest in enforcing its own laws, nor the nature and effect of the proceedings."); *LG Display Co. v. Madigan*, 665 F.3d 768, 773 (7th Cir. 2011) ("Whether a state is the real party in interest in a suit 'is a question to be determined from the essential nature and effect of the proceeding.'" (quoting *Nuclear Engineering Co. v. Scott*, 660 F.2d 241, 250 (7th Cir. 1981)).[4]

Meanwhile, another line of cases, not discussed by either party or by the cases referenced above, is relevant here. These are "false claims act" cases, otherwise known as "qui tam" cases, which are brought by private citizens on behalf of the government, alleging that the defendant has defrauded the government and seeking to recover money on its behalf. There is a federal False Claims Act, 31 U.S.C. § 3729, and many states, like California and Illinois, have analogous statutes, *see* Cal. Gov't Code § 12652; 740 Ill. Comp. Stat. 175/4. In a false claims qui tam action, the private citizen typically is entitled to a significant portion of the recovery against a defendant. For example, a plaintiff suing on behalf of the federal government gets up to 30 percent, 31 U.S.C. § 3730(d), a qui tam plaintiff in Illinois can get up to 30 percent, 740 Ill. Comp. Stat. 175/4(d)(2), and a qui tam plaintiff in California can get up to 50 percent, Cal. Gov't Code § 12652(g)(3). In various contexts, courts recognize that in these lawsuits brought by private parties, the government entity is the real party in interest. *See, e.g.*, *United States ex rel.*

---

[4] In *Purdue Pharma L.P. v. Kentucky*, the Second Circuit recognized that the "whole-complaint" approach, as adopted by the Ninth Circuit in *Nevada*, has emerged as the majority rule, but it didn't need to decide whether to adopt that standard in that case. *See* 704 F.3d 208, 219 (2d Cir. 2013). The minority position – which requires the court to analyze the relief sought for each claim to determine whether all of the benefit will go to the state – is taken by the Fifth Circuit. *See Louisiana ex rel. Caldwell v. Allstate Insurance Co.*, 536 F.3d 418, 422-23, 432 (5th Cir. 2008), *abrogated on other grounds by Hood*, 571 U.S. 161.

*Eisenstein v. City of New York*, 556 U.S. 928, 930 (2009); *Scachitti v. UBS Financial Services*, 215 Ill. 2d 484, 498 (2005). This includes when courts inquire specifically whether the state is the real party in interest for diversity jurisdiction purposes. *See, e.g.*, *California ex rel. SDVT v. MCI Telecommunications Corp.*, No. 97-17309, 1999 WL 387034, at *1 (9th Cir. May 24, 1999) (unpublished); *New Mexico ex rel. National Education Ass'n of New Mexico, Inc. v. Austin Capital Mgmt. Ltd.*, 671 F. Supp. 2d 1248, 1251 (D.N.M. 2009); *Indiana ex rel. Harmeyer v. Kroger Co.*, No. 117CV00538JMSDML, 2017 WL 2544111, at *3 (S.D. Ind. June 13, 2017); *cf. Bates v. Mortgage Electronic Registration System, Inc.*, 694 F.3d 1076, 1080-81 (9th Cir. 2012). The fact that the private citizen obtains a portion of the recovery is irrelevant in this line of cases; the point is that the lawsuit primarily serves the interests of the state even if the relief won't inure to the state alone.

The upshot, considering all these cases together, is that the Supreme Court's statement in *Missouri Railroad* – that "the State is such real party when the relief sought is that which enures to it alone" – cannot be understood to mean that this is the *only* circumstance in which a state can be deemed the real party in interest for diversity purposes. Rather, it must be understood as referencing *an example* of a circumstance in which the state is the real party in interest. *See Florida v. Exxon Mobil Corp.*, No. 4:10CV21-RH/WCS, 2010 WL 11579390, at *4-5 (N.D. Fla. Apr. 16, 2010).[5] As *Nevada*, *Lucent*, and the other decisions cited above show, the overall test is whether the government official or entity's lawsuit would primarily vindicate state interests and primarily obtain relief for the state, rather than serving primarily parochial interests and obtaining parochial relief.

## B.

Next, Facebook seems to contend that even if the "enures to the state alone" language doesn't apply when a lawsuit is brought by a state's chief legal officer – usually the Attorney

---

[5] The dicta in two contemporaneous Supreme Court cases citing this language from *Missouri Railroad* – although not mentioned by either party here – must be understood in the same way. *See Ex parte Young*, 209 U.S. 123, 155 (1908); *Ex parte Nebraska*, 209 U.S. 436, 446 (1907).

General – it should at least apply when a lawsuit is brought by a subordinate government official or entity (such as a county prosecutor). Facebook reasons that where subordinate entities have brought cases, like in *Missouri Railroad*, *Port of Seattle*, and *Lucent*, courts have declined to find the state to be the real party in interest, whereas in cases like *Nevada*, which was prosecuted by the Attorney General, courts have been willing to deem the state the real party in interest despite the benefits private parties would receive from the lawsuit. Therefore, Facebook asserts, where a subordinate official or entity brings the case, there is sort of a presumption against deeming the state the real party in interest, such that the relief sought must benefit the state as a governmental entity alone, with no additional parochial benefit to be derived by individual citizens or by the subordinate entity that brought the suit. This interpretation of the case law, however, has some major problems.

As it relates to *Missouri Railroad*, there's no indication the Supreme Court's ruling would have been different had the State of Missouri, rather than the Railroad Commission, initiated the lawsuit. In fact, the Missouri Attorney General, Edward Crow, represented the Commission in the Supreme Court, and he presumably did so in the lower courts as well because Missouri law provided that the Attorney General would represent the Commission in rate actions. 183 U.S. at 56-57.

Nor does *Port of Seattle* support Facebook's interpretation. Although the Court's analysis in that case was admittedly less than clear, there's no indication it intended to create a legal presumption against subordinate entities suing to vindicate state interests. Rather, the Court was concerned with the particular interests the Port sought to vindicate in that lawsuit, which the Court viewed as fundamentally parochial. 255 U.S. at 71.[6]

Facebook's argument also does not account for the qui tam cases, which show that even

---

[6] The Court stated that the Port of Seattle was not a state entity for Eleventh Amendment immunity purposes, implying that if it were, the State may have been the real party in interest. As discussed in Subsection D, to the extent the Eleventh Amendment analysis is relevant, it cuts against Facebook here, because a county prosecutor is a state official for Eleventh Amendment purposes when bringing a suit like this.

10

when a private party – much less a subordinate state official – sues on behalf of the state, and even when that private party would obtain a portion of the recovery for themselves, the state may be deemed the real party in interest.

But more fundamentally, Facebook's proposed approach confuses two distinct inquiries. Although the question of whether a state is the real party in interest for diversity purposes is one of federal common law, the question of who has the *authority* to represent the state's interests in a lawsuit is a question of state law. Unless a state constitution somehow were to preclude it, a state legislature obviously has the power to authorize more than one official or entity (including a subordinate official or entity) to bring actions on behalf of the state. And once it's determined that a subordinate official has the authority under state law to represent the state's interests and seek relief for the state writ large, there's no reason to analyze the federal "real party in interest" question differently when it happens to be the subordinate official, rather than the Attorney General, who has brought the lawsuit. Perhaps a case brought by a subordinate official will be more likely, as a predictive matter, to serve parochial interests, but the legal test is the same: If the suit brought by a state, or by a party authorized to represent the state, would serve primarily a parochial interest, then the state is not the real party in interest for diversity purposes. But if the suit would primarily serve the state's interests rather than parochial ones, seeking relief primarily for the benefit of the state as a whole, the state is the real party in interest.

## C.

Facebook argues that even if the test is the same when a subordinate official brings the lawsuit, that would not help Foxx in this case, because under Illinois law a State's Attorney does not have authority to represent the state's interests in a civil fraud action. Specifically, Facebook contends the Illinois Consumer Fraud Act should be construed as limiting the scope of actions by State's Attorneys to the jurisdictions they represent, such that a lawsuit by a State's Attorney may only target conduct that occurred within the county, and may only seek relief for the county or the people within it. These state-law limitations on Foxx's power, according to Facebook, mean that she is not prosecuting this action on behalf of the State of Illinois.

11

But the plain language of the Consumer Fraud Act suggests very strongly that a State's Attorney can bring a lawsuit to enforce it on behalf of Illinois itself, with authority to remedy statewide conduct and seek statewide relief. The Act, without distinguishing between the Attorney General and a State's Attorney in terms of their roles, provides that either may seek injunctive relief, penalties, and restitution in the name of the People of Illinois:

> Whenever the Attorney General or a State's Attorney has reason to believe that any person is using, has used, or is about to use any method, act or practice declared by this Act to be unlawful, and that proceedings would be in the public interest, he or she may bring an action in the name of the People of the State against such person to restrain by preliminary or permanent injunction the use of such method, act or practice . . . .
>
> In addition to the remedies provided herein, the Attorney General or State's Attorney may request and the Court may impose a civil penalty in a sum not to exceed $50,000 against any person found by the Court to have engaged in any method, act or practice declared unlawful under this Act.

815 Ill. Comp. Stat. 505/7.

The legislative history, while sparse, further suggests that the Legislature did not intend the State's Attorney to have a more circumscribed role. Initially, only the Attorney General could sue under the statute, but in 1986 the Legislature added State's Attorneys. In a statement on the Senate floor immediately before unanimous passage, Senator Timothy F. Degnan, the sponsor of the legislation, explained that the bill "amends the Consumer Fraud and Deceptive Practices Act, authoriz[ing] the state's attorneys of any county to bring an action to enforce the Act *on the same basis* as the Attorney General." Transcript of Floor Debate, Senate, June 26, 1985, at 156, (emphasis added), https://cite.law/B7K3-MPBF. Senator Degnan added that the amendment "gives those state's attorneys the same investigative and subpoena powers as the Attorney General with regard to the Act." *Id.*

All this comes against a constitutional and statutory backdrop that treats State's Attorneys as state officers with authority to vindicate not just county interests but state interests. It's a longstanding principle, the Illinois Supreme Court has explained, that a "State's Attorney is a constitutional officer with rights and duties 'analogous to or largely coincident with the Attorney

General . . . and the one to represent the county *or People* in matters affected with a public interest." *People ex rel. Alvarez v. Gaughan*, 72 N.E.3d 276, 287 (Ill. 2016) (emphasis added) (quoting *County of Cook ex rel. Rifkin v. Bear Stearns & Co.*, 215 Ill. 2d 466, 476 (2005)). The statute that generally defines the powers and duties of the State's Attorneys includes the officials' responsibility to "commence and prosecute all actions, . . . civil and criminal, in the circuit court for his county, in which the people of the State . . . may be concerned." 55 Ill. Comp. Stat. 5/3-9005(a)(1). And Illinois courts have made clear, "State's Attorneys should be classified as State, rather than county, officials." *Ingemunson v. Hedges*, 133 Ill. 2d 364, 369 (1990).

Facebook asserts it would be absurd to allow multiple public prosecutors to enforce the State's consumer fraud laws on a statewide basis, and so the Illinois Consumer Fraud Act should be construed more narrowly than its plain language suggests. To the contrary, it makes perfect sense for the Legislature to have conferred this authority on multiple prosecutors.

First, it makes sense in light of the goals of the Consumer Fraud Act itself. Consumer fraud, after all, can be difficult to detect. It can be expensive to investigate. And it can be challenging to prosecute. At the same time, combating consumer fraud is a high legislative priority in Illinois. *Cf. Avery v. State Farm Mutual Auto. Insurance Co.*, 216 Ill. 2d 100, 186-87 (2005); *American Buyers Club of Mt. Vernon, Ill., Inc. v. Honecker*, 46 Ill. App. 3d 252, 255 (1977). Given the importance of these interests to the Legislature and the challenges involved in vindicating them, it's no surprise the Legislature would expand the number of public prosecutors empowered to obtain statewide injunctions, restitution for residents throughout the State, and civil penalties to deter future misconduct within it.

A legislative decision to give multiple prosecutors the power to bring statewide fraud actions makes sense from a governance standpoint as well. The Attorney General, as the State's chief legal officer, has the power "to control all litigation on behalf of the State including intervention in and management of all such proceedings." *People v. Massarella*, 72 Ill. 2d 531, 534 (1978); *People ex rel. Devine v. Time Consumer Marketing*, 336 Ill. App. 3d 74, 82 (2002).

To that end, State's Attorneys are required to keep the Attorney General apprised of any lawsuit they bring under the Illinois Consumer Fraud Act. *See* 815 Ill. Comp. Stat. 505/6. And regardless, it's not difficult for an Attorney General's office to keep track of consumer fraud actions brought by county prosecutors; after all, part of the Attorney General's responsibility as the State's chief legal officer is to oversee what county prosecutors are doing. *See* 15 Ill. Comp. Stat. 205/4. Thus, if a State's Attorney brings a statewide action and the Attorney General disagrees with its scope, its timing, the relief it seeks, or the way it's being pursued, she can simply intervene and take over the case.[7] The Attorney General's supremacy also allows her to settle consumer fraud matters out from under county prosecutors. *See Time Consumer Marketing*, 336 Ill. App. 3d at 82. And presumably the Attorney General could intervene simply to obtain a stay, on the ground that the Attorney General is in the process of her own investigation. Therefore, Facebook's purported concern that county prosecutors' statewide authority will interfere with the Attorney General's role is unfounded. To the contrary, it is precisely the Attorney General's supremacy that makes the system work well from a governance standpoint.

Nor is a system of multiple public prosecutors unfair. Facebook raises the specter of a company defeating one statewide consumer fraud action by a county prosecutor, only to be forced to defend subsequent statewide actions based on the same conduct by the Attorney General. But the company likely wouldn't face that scenario because of claim preclusion. If a State's Attorney brought a civil consumer fraud action on behalf of the State, a judgment on the merits in that action would very likely preclude the Attorney General or other State's Attorneys from bringing a similar statewide action in the future. Whether an action by one state entity precludes an action by another state entity depends in part on their respective "functions and responsibilities." Restatement (Second) of Judgments § 36 (Am. Law Inst. 1982). When it comes

---

[7] It appears that the Illinois Attorney General and the Cook County State's Attorney fully agree on this point. *See Plaintiff's Second Supplemental Brief* at 1, Dkt. No. 76; *Illinois Attorney General's Amicus Curiae Brief* at 2, Dkt. No. 78.

to bringing civil lawsuits under the consumer fraud statute, the functions and responsibilities of the Attorney General and county prosecutors are largely the same. And as discussed above, the Attorney General has supremacy over actions brought by State's Attorneys under the statute, and will inevitably be aware of such actions. From the Legislature's standpoint, a predictable and tolerable consequence of beefing up fraud enforcement in this fashion is that sometimes the Attorney General might get beaten to the punch on a lawsuit, and might be barred from bringing one later if she doesn't intervene in the present one.[8]

For all these reasons, Facebook is wrong to argue that adherence to the plain language of the Consumer Fraud Act with respect to the scope of a county prosecutor's authority would create absurd results. To the contrary, it is Facebook's construction that would create all manner of problems. Imagine a scenario where a defendant engages in fraud throughout the state – fraud that affects people in similar ways regardless of county. Further imagine that the Attorney General (for reasons relating to resources, priorities, competence, or politics) fails to act. Then imagine that a county prosecutor brings an action against the wrongdoer and prevails. If the suit could cover only conduct within the county, or if relief were limited to the jurisdictional boundaries of the county, then only the residents of that county would be protected, and only the fraud that affected the county would be punished, despite the fraud's effects being felt statewide. For people from the other 101 counties in Illinois, either their rights would not be vindicated or each county prosecutor would need to bring a copycat action. Such a system does not seem sensible from anyone's standpoint, including the defendant's.

Facebook notes that the Illinois Consumer Fraud Act is quite similar to California's Unfair Competition Law ("UCL"). *Compare* 815 Ill. Comp. Stat. 505/1 et seq., *with* Cal. Bus. & Prof. Code § 17200 et seq. Facebook thus relies on a split decision by the California Court of

---

[8] When a State's Attorney brings an action that is limited to conduct taking place within the county, and limited to seeking county-wide relief, a subsequent action by an Attorney General or another State's Attorney would presumably not be barred under the doctrine of claim preclusion. That said, the official bringing the subsequent action may be restricted by other doctrines like the double-recovery rule or, in a criminal matter, double jeopardy. *See, e.g.*, *520 Michigan Ave. Associates, Ltd. v. Devine*, 433 F.3d 961, 964 (7th Cir. 2006).

15

Appeal holding that a county prosecutor lacks the authority to pursue claims on behalf of Californians residing outside the county or based on conduct that took place outside the county. *See Abbott Laboratories v. Superior Court*, 24 Cal. App. 5th 1, 10 (2018), *petition for review granted*, 424 P.3d 268 (Cal. 2018). But just as a system of multiple prosecutors empowered to enforce civil fraud laws for Illinois makes sense from a legal and practical standpoint, it makes sense for California too. Therefore, the majority opinion in *Abbott Labs.*, which strained to narrow California's plain statutory language, is likely wrong. As the dissenting Justice wrote, "[c]onsistent with the UCL's broad remedial purposes and the perceived need for vigorous enforcement, there is nothing unconstitutional about the Legislature's decision to permit and encourage multiple public prosecutors with overlapping lines of authority on the theory that more enforcement in this context is better than less." *Id.* at 35 (Dato, J., dissenting); *see also California v. IntelliGender, LLC*, 771 F.3d 1169, 1177 & n.7 (9th Cir. 2014) ("IntelliGender . . . assert[s] that under California Government Code § 72193 the City lacks authority to bring a lawsuit on behalf of the people of the State of California because the City's reach is limited to the local level. The clear statutory text of California Business and Professions Code § 17535, which provides, '[a]ctions for injunction under this section may be prosecuted by the Attorney General or any . . . city attorney . . . in this state in the name of the people of the State of California,' precludes IntelliGender's novel argument.").

In sum, the best reading of the plain language of the Illinois Consumer Fraud Act is that it authorizes county prosecutors to represent the State of Illinois in consumer fraud actions on the same terms as the Attorney General. This finds support in the little legislative history that exists, and there is certainly nothing absurd about it. Accordingly, there is no basis for this Court to conclude, as a matter of Illinois law, that Kimberly Foxx is not authorized to represent the interests of the State of Illinois in a statewide enforcement action. This is particularly true where reasonable doubts about jurisdiction should be resolved in favor of remand, which in this context means that doubts should be resolved in Foxx's favor on this question of state law.

# D.

Of course, the fact that Foxx has state law authority to represent the interests of Illinois in a statewide consumer fraud action does not automatically mean that, in this particular action, Illinois is the real party in interest for purposes of federal jurisdiction. Facebook next argues that, in this case, Illinois cannot be the real party in interest because any civil penalties recovered by Foxx will go to Cook County's treasury rather than the State's.

The Consumer Fraud Act does not specify where penalties should go for this type of case. This means, according to the parties, that when a state court awards civil penalties in an action brought by a State's Attorney under the Consumer Fraud Act, the court has discretion to direct those penalties to the county treasury. *Cf.* 815 Ill. Comp. Stat. 505/7. Facebook is probably right to predict that a court would direct penalties to the county treasury in an action brought by a county prosecutor. But the likelihood that civil penalties would end up in a county treasury is less important than Facebook assumes, at least in this context.

Recall that the purpose of a civil penalty is not to compensate a victim but to punish the wrongdoer and deter future wrongdoing by others. Thus, from a punishment and deterrence standpoint, it serves the interests of the statute (and therefore the interests of Illinois) equally whether the penalties end up in state or county treasury. *Cf. Indiana v. Alleghany Oil Co.*, 85 F. 870, 873 (C.C.D. Ind. 1898) ("The penalty is inflicted for the violation of the statute of the state enacted to secure public, and not private, rights . . . . The state is the real party plaintiff, the cause of action belongs to it, and the county is named simply as the party to whom the penalty due the state is to be paid when collected.").

Recall further that in this case the action is brought by a county official pursuant to a grant of authority by the Legislature, to empower – and likely to incent – county prosecutors to enforce the Consumer Fraud Act. It is consistent with the system of enforcement incentives created by the statute (and it thus furthers the statute's goal of consumer fraud protection statewide) to allow the counties themselves, rather than the state, to recover penalties in actions

brought by their own officials.[9]

What's more, counties are political subdivisions of the state. Counties serve state functions, performing services (like administering the marriage laws or providing health care to the indigent) mandated by state law. Just as appropriations by state legislatures to counties serve state interests, so too does allowing civil penalties to go to the treasury of a county whose prosecutor brought a lawsuit pursuant to a statute that seeks to incent public prosecutors to vigorously enforce the consumer protection laws. In this regard, Foxx's lawsuit stands in contrast to the action brought by the local government entity in *Port of Seattle*. Here, an Illinois State's Attorney seeks to impose civil penalties for violations of a state consumer protection law that the Legislature has tapped county prosecutors to vindicate. In *Port of Seattle*, a special-purpose municipality filed a lawsuit that the Supreme Court viewed as seeking to exploit the municipality's narrow and unique interest in a piece of land. *See* 255 U.S. at 71.[10]

Facebook also points to *In re Avandia Marketing, Sales Practices & Product Liability Litigation*, a case where a district court in Pennsylvania, adopting a report and recommendation from a special master, concluded that California was not the real party in interest in an action brought by the Santa Clara County Counsel, in large part because penalties would go to the county rather than the State. 238 F. Supp. 3d 723 (E.D. Pa. 2017). It's possible the district court

---

[9] In contrast to California's statute, which requires counties to use such penalties for further enforcement of the consumer protection laws, the Illinois statute does not speak to where the penalties go or mandate how they are used. *Compare* Cal. Bus. & Prof. Code § 17206(c), *with* 815 Ill. Comp. Stat. 505/7. But the basic incentive structure is similar.

[10] On a related note, to the extent it remains relevant under current case law, county prosecutors, when acting to enforce the state's laws, are state officials for Eleventh Amendment purposes. *See, e.g.*, *Vasquez v. Rackauckas*, 734 F.3d 1025, 1041 (9th Cir. 2013); *Garcia v. City of Chicago, Ill.*, 24 F.3d 966, 969 (7th Cir. 1994). In this respect, Foxx's lawsuit is further distinguishable from the one brought by the Port of Seattle, which was not a state entity for Eleventh Amendment purposes. 255 U.S. at 71. Counsel for Facebook tepidly asserted at oral argument that a county prosecutor is not a state official for purposes of the Eleventh Amendment when the prosecutor is bringing a statewide civil enforcement action under a statute like the Illinois Consumer Fraud Act. There is no basis, however, for distinguishing between civil and criminal enforcement of state law. *Cf. IntelliGender*, 771 F.3d at 1177 n.7 (recognizing a civil action brought by a City Attorney on behalf of the "People of the State of California" as "a state enforcement action rather than an action brought by the City for individual relief").

reached the correct result based on several peculiar procedural factors not applicable here (including that the lawsuit was initially filed in federal court on behalf of not just "the People" but the County itself, as a separate plaintiff). But the court's ruling contains several analytical errors. For example, the court appeared to apply the wrong law – Ninth Circuit law rather than the law of its own circuit. *See id.* at 727-30.[11] Even then, the court misapplied Ninth Circuit law. The court concluded that the State was not the real party in interest because "the relief sought would not inure to the benefit of the state alone," even though, as discussed above in subsection III.A., that is not the test in the Ninth Circuit. *See id.* at 730. Moreover, the district court relied heavily on the fact that penalties sought by the county prosecutors would go to the county rather than the State, without any analysis of the role of District Attorneys in California, or of the purpose of California's consumer protection laws and the way they operate. On this issue, Judge Fogel's decision in *California v. Universal Syndications, Inc.* – a case presenting the same issue of whether to remand a case brought by a county official on behalf of the state – is more persuasive. No. C 09-1186 JF(PVT), 2009 WL 1689651, at *5 (N.D. Cal. June 16, 2009). And his analysis underscores the relative unimportance, at least in the context of an action by a county official pursuant to a state consumer fraud statute, of the fact that the county receives the penalties rather than the state. *See also California v. Boehringer Ingelheim Pharm., Inc.*, No. SACV1700923AGKSX, 2017 WL 3269074, at *3 (C.D. Cal. July 31, 2017); *California v. Purdue Pharma L.P.*, No. SACV 14-1080-JLS DFM, 2014 WL 6065907, at *3 (C.D. Cal. Nov. 12, 2014); *County of Santa Clara ex rel. Marquez v. Bristol Myers Squibb Co.*, No. 5:12-CV-03256-EJD, 2012 WL 4189126, at *3 (N.D. Cal. Sept. 17, 2012).

---

[11] *See In re Community Bank of N. Virginia Mortgage Lending Practices Litig.*, 795 F.3d 380, 391 (3d Cir. 2015); *In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 368 n.8 (3d Cir. 1993); *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 624 F. Supp. 2d 396, 408 n.11 (E.D. Pa. 2009); *cf. In re Korean Air Lines*, 642 F.3d at 699-700 & n.12; *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993); *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1176 (D.C. Cir. 1987), *aff'd sub nom. Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122 (1989).

## IV.

Once all these concerns presented by Facebook are laid to rest, the analysis becomes fairly straightforward. If Foxx's lawsuit primarily serves parochial or private interests, then Illinois is not the real party in interest. *See Lucent*, 642 F.3d at 739. But if the lawsuit serves primarily interests of the State of Illinois, then Illinois is the real party in interest. Sometimes the line is hard to draw, because after all, a state's general interests will often overlap with parochial or private interests within that state. But this case does not come close to the line, because it's clear that Foxx's lawsuit serves primarily the interests of the State of Illinois. The lawsuit seeks civil penalties that private citizens could not obtain – penalties that would punish fraud against Illinois residents and deter future similar wrongdoing in the State. It seeks statewide injunctive relief to prevent future violation of the privacy rights of a large and diffuse group of Illinois residents – a matter of statewide concern analogous to the interests served by the Attorney General's lawsuit in the *Nevada* case. *See* 672 F.3d at 670. Indeed, Foxx's lawsuit does not even seek restitution on behalf of Illinois Facebook users (although doing so likely would not have been a deal-killer, as the *Nevada* case shows). Of course, we don't yet know if Foxx's claims have merit, but that's not the point. The point is that she has the right, on behalf of the State of Illinois, to assert these claims and attempt to vindicate these interests. Overall, this is the embodiment of a state enforcement action brought in the public interest. Therefore, Illinois is the real party in interest for diversity purposes, which means there is no diversity jurisdiction and the action must be remanded to the Circuit Court of Cook County, Illinois.

**IT IS SO ORDERED.**

Dated: January 29, 2019

VINCE CHHABRIA
United States District Judge